**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

ROBERT T. DEMERS
ADC #114850                                                                                              PLAINTIFF

V.                                        NO: 5:05CV00307 JMM/HDY

LARRY B. NORRIS *et al.*                                                                     DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Court Judge James M. Moody. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.
2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

1

  3.  The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

  Mail your objections and "Statement of Necessity" to:

    Clerk, United States District Court
    Eastern District of Arkansas
    600 West Capitol Avenue, Suite 402
    Little Rock, AR 72201-3325

## **DISPOSITION**

  A trial was held in this case before the Court on February 13, 2007. Following the presentation of testimony by the parties and witnesses, and submission of exhibits, the Court enters the following findings and recommendation.

### I. Facts

  Plaintiff is currently incarcerated at the Tucker Unit of the Arkansas Department of Correction ("ADC"). The events giving rise to this cause of action occurred in May of 2005, when Plaintiff was a participant in the ADC's Reduction of Sexual Victimization Program ("RSVP"). Defendants are Dennis Ballinger, RSVP correction counselor, and Sharon Graydon, a Tucker correctional officer. The undersigned has previously recommended the dismissal of Defendants Richard L. Moore, RSVP clinical director; and Cleo G. Smith, rehabilitation program administrator.

  In May of 2005, Plaintiff, along with inmate David Felty, and others, was enrolled in the RSVP program, and attended classes led by Ballinger. The treatment model dictated some degree

of confrontation among the class participants. What this meant, in part, was that inmates who were more passive, such as the Plaintiff, were challenged to be more assertive, and inmates such as Felty were challenged to handle confrontation less aggressively and with less hostility. In order to accomplish these objectives, the more passive inmates sometimes were asked to "correct" the more aggressive participants. At some point during the sessions, Felty became angry with Plaintiff and at least two other participants, and Plaintiff became concerned for his safety due to indirect threats made by Felty. On May 18, 2005, Plaintiff approached Ballinger to complain of veiled threats made by Felty. Ballinger asked Plaintiff if Felty had made any direct threats against him, and Plaintiff said he had not. Because Felty had made no direct threats, Ballinger took no immediate action. Ballinger did not perceive that Plaintiff faced any significant threat of harm from Felty. However, Ballinger did tell Plaintiff that if he feared Felty, that he should give him space, and leave him alone.

Although he took no immediate action, Ballinger did, on May 26, 2005, hold a special group meeting in which he warned Felty to not retaliate against any class participant who confronted him. Ballinger also referred Felty to a psychologist for evaluation, to determine his suitability for continuing in the RSVP program. Felty had become increasingly belligerent in class sessions, and Ballinger occasionally had to remove him from the classroom. Ballinger had become concerned that the class might turn against Felty, which would essentially eliminate any therapeutic benefit to Felty. Ballinger believed that there was a greater threat of Felty being a "victim" of the unrest that he was causing than that there was a threat of physical harm against the Plaintiff. He believed that the other participants might like to see Felty kicked out of the program and, therefore, they might take some action to "set Felty off" which would lead to his expulsion from the RSVP program. From a physical perspective, Ballinger believed that there was a greater likelihood that Felty would act

against him than any of the inmates. Still, he didn't feel that threat was sufficiently great to warrant Felty's removal without exploring other options for improving Felty's behavior. Defendants' exhibit #9 is a copy of Ballinger's treatment notes, in which he noted that Dr. Simmons, a psychologist, would evaluate Felty on May 27, 2005, on a recommendation that Felty be "removed for non-amenability." That evaluation apparently led to a recommendation that Felty see a psychiatrist for possible medication with the hope that Felty could begin to get his behavior under control.

However, on May 28, 2005, a Saturday, Felty assaulted Plaintiff in the barracks. This was preceded by a verbal exchange between Plaintiff and Felty, of which neither of the Defendants, nor any other ADC official, was made aware of by Plaintiff. On that day, as Felty was exiting the barracks for a visit, Felty called Plaintiff a "shark" as an apparent reference to Felty's perception that Plaintiff was causing Felty problems in the RSVP program. Plaintiff asserted himself and told Felty that he was going to have to stop calling him a shark. An hour and a half elapsed while Felty was gone for his visit. Plaintiff testified that he thought that there was "getting ready to be a fight," but he did not alert Defendant Graydon or any other ADC officer. When Felty returned from his visit, he "got in Plaintiff's face" and told Plaintiff that he (Felty) was going to do whatever he wanted to do. Plaintiff responded by walking away from Felty. Felty told Plaintiff to not walk away from him while he was talking, but Plaintiff continued to walk away. Plaintiff was then struck twice in the back of the head, and knocked to the ground near the doorway of a control booth occupied by Graydon. However, when Plaintiff landed, he was behind a wall, where Graydon couldn't see the assault. Graydon heard a noise, and came out of the control booth, at which time she noticed Plaintiff lying in a pool of blood on the floor. Graydon tried to call for help on the radio, but got no response, so she went into the booth to call for help. While Graydon was in the booth, she saw Felty

stomp on Plaintiff. Graydon then immediately ordered Felty to his bunk, and he complied.

## II. Analysis

In *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), the Court held that, in order for a prisoner to recover against prison officials for failing to protect him, he must prove that: (1) "he [was] incarcerated under conditions posing a substantial risk of serious harm"; and (2) the prison official was deliberately indifferent to that substantial risk of serious harm. In defining deliberate indifference, the Court, in *Farmer,* explained:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; *the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference*.

*Id.* at 837 (emphasis added). Additionally, the Eighth Circuit has explained that this rigorous standard of proof is appropriate because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Jensen v. Clarke*, 73 F.3d 808, 810 (8th Cir. 1996) (*citing Wilson v. Seiter,* 501 U.S. 294, 297 (1991)).

Defendants called as witnesses Smith, Graydon, and Ballinger. Plaintiff called three witnesses at the trial: John Womack, Dudley Beckers, and Ronnie Forrest. All three were participants in the RSVP program with Plaintiff and Felty. According to Womack, Felty never made specific threats, but that they were always veiled. Specifically, Womack testified that Felty never said that he (Felty) "was going to beat" Plaintiff "down." Womack said Ballinger used the confrontation model to get the participants to change their thinking. Womack also testified the he did not believe that Ballinger wanted Felty to assault Plaintiff, or that he believed Ballinger thought Felty would attack him. Beckers said that he told Ballinger that Felty had made threats against

anyone who might get him thrown out of the program. The threats described by Beckers were nonspecific as to the individual and the action threatened. Beckers also testified that he himself felt threatened by Felty. Beckers did not testify that he heard any direct threats by Felty toward Plaintiff. Forrest testified that the classroom setting was "the Felty show," and that Felty's behavior problems in class led to Ballinger dismissing him from the class at times. Forrest said he himself did not feel threatened by Felty, but that he had little to do with him. Forrest, unlike Womack and Beckers, was an eyewitness to the actual assault. According to Forrest's testimony, he believed Graydon responded to the attack rather quickly, and indicated that when she first came out of the control booth, she did not realize the extent of what was going on.

Plaintiff is seeking to hold Ballinger liable for allegedly failing to take action to remove Felty from the RSVP program or provide Plaintiff with additional protection, and Graydon liable for her alleged failure to intervene quickly enough once the assault had begun. Because each situation requires a somewhat different analysis, the Court will consider each Defendant's actions separately.

A. *Defendant Ballinger*

The testimony of all the witnesses, including Plaintiff, makes clear that Felty's alleged threats were vague, and nonspecific. They were certainly not of a type that would have alerted Ballinger to a real threat of physical harm presented to Plaintiff by Felty. Without a specific threat to act upon, Ballinger was not in a position to remove Felty from the program, or to take other action. According to Smith, who was the program director at the time, the only way for Felty to be removed from the program before psychological testing results indicated the need for removal, would be for Felty's fighting. As discussed above, Ballinger actually did refer Plaintiff to a psychologist for testing to determine whether he should remain in the program.

Additionally, Plaintiff failed to utilize all the resources at his disposal to try to protect himself from Felty. Although Plaintiff told Ballinger that he felt threatened, he did not file a grievance on the threats, or Ballinger's response to his concerns. Smith testified that Plaintiff never requested an interview with her. Further, Defendants' exhibit #6 outlines the procedures a program participant should take when he has a conflict with another participant. According to the procedure, if the two individuals are unable to solve the problem themselves, they should request help from the support person. If that is unsuccessful, they are to bring the problem to the group, or to staff in writing. Plaintiff never brought any problem to the staff in writing. Plaintiff did not ask for Felty to be placed on his enemy alert list until after the assault. Finally, on the day of the assault, Felty was out of the barracks for an hour and a half, and Plaintiff never notified Graydon, the officer on duty, that he felt threatened, and that she should closely monitor the situation.

It is clear that Felty was a behavior problem. However, no evidence presented at the hearing indicates that Felty made any direct threats that would indicate Ballinger's failure to immediately remove Felty from the program evinced deliberate indifference. Thus, Plaintiff's claims against Ballinger should be dismissed.

*B. Defendant Graydon*

Gryadon was the officer on duty in the control booth the day of the assault, where she was filling in for another officer who was not at work. Plaintiff asserts that she did not respond quickly enough to stop the attack. However, the one eyewitness to the assault who was present at the hearing, Forrest, testified that Graydon did not realize the extent of what happened when she first

came out of the control booth.[1] According to Forrest, Graydon responded quickly when she recognized the severity of the situation. As discussed earlier, Plaintiff had ample opportunity to warn Graydon of the situation the day of the attack, if he believed an assault was imminent, and he failed to do so. The evidence introduced at trial indicates that Plaintiff was struck twice near the control booth, and fell behind a wall outside the control booth door. Graydon heard the commotion, and came out to investigate, and, upon seeing the gravity of the situation unsuccessfully tried to radio for help, then returned to the control booth to call for help, which later arrived.[2] Thus, Plaintiff has failed to demonstrate that Graydon was deliberately indifferent to his safety, and his claims against her should be dismissed as well.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.   Plaintiff's complaint be DISMISSED WITH PREJUDICE.

2.   All pending motions be DENIED AS MOOT.

---

[1] Plaintiff also sought to introduce affidavits from two other eyewitnesses to the assault, but his request was denied. According to Plaintiff's filings, Robert Burnett and Jobe Hicks were also eyewitnesses to the attack (docket entry #103). Burnett has an affidavit on file already (docket entry #11), in which he describes no effort on the part of Graydon to stop the last part of the attack, and also indicates a slow response time and lack of first aid supplies by the medical staff when they did arrive. The affidavit is consistent with the testimony offered at the hearing, which indicates that the second part of the assault occurred when Graydon returned to the control booth to call for help. Any shortcoming in the response time or the preparation of the medical staff would not be the fault of Graydon. According to a cover sheet submitted with the Burnett affidavit, Hicks's testimony would be substantially the same as that of Burnett.

[2] It is not clear how long the medical personnel took to arrive, but their response time is not relevant to the determination whether Graydon herself was deliberately indifferent to Plaintiff's safety. The evidence indicates that Graydon responded appropriately under the circumstances. Additionally, no testimony by any of Plaintiff's witnesses indicated that Graydon was anything other than a conscientious officer.

3.      The Court certify that an *in forma pauperis* appeal taken from the order and judgment dismissing this action be considered frivolous and not in good faith.

DATED this __14__ day of February, 2007.

_____
UNITED STATES MAGISTRATE JUDGE